ORDERED in the Southern District of Florida on Oct. 26, 2007



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

SUNCRUZ CASINOS, LLC
JAB AMERICA, INC.,

    Debtors.
_____/

Case Nos. 01-24661-BKC-JKO
01-24662-BKC-JKO
(Jointly Administered)

Chapter 11

**ORDER GRANTING MOTION TO ALLOW LATE FILED CLAIM
AND MOTION TO ALLOW RELIEF FROM STAY**

**THIS CASE** came before the Court on June 6, 2007 for a final evidentiary hearing on Steven Sheridan's Motion for Rehearing on Order Denying Motion to Allow Late Filed Claim and Motion to Allow Relief from Stay (the "Motion") [DE 3436] and the Order Granting that Motion (the "Order") [DE 3475] over the objection (the "Objection") [DE 3453] of Wells Fargo Foothill, Inc. ("Wells Fargo Foothill"), a party in interest,[1] and the Debtor SunCruz Casinos LLC ("SunCruz"; For purposes of this

---

[1] Wells Fargo Foothill was the Debtor's primary secured creditor. Under the Debtor's confirmed chapter 11 reorganization plan, Wells Fargo Foothill is required to fund administrative expense claims of the sort at issue here. It is thus the real party in interest adverse to Steven Sheridan's claim.

Order, Wells Fargo Foothill and SunCruz are referred to collectively as "SunCruz/Foothill"). The Order held (1) that the Motion and the Objection would be considered a contested matter as provided by Bankruptcy Rule 9014(a), (2) that discovery would proceed in accordance with Bankruptcy Rule 9014(c), and (3) that the parties would advise the Court when discovery had been completed and the matter was ripe for an evidentiary hearing. The parties did so and the evidentiary hearing was held. I have now reviewed the papers, heard the arguments of counsel, considered witness testimony and find that it is appropriate to rule.

## Background

On or about July 22, 2005, Steve Sheridan ("Sheridan") initiated a maritime personal injury action by filing a complaint against Oceans Casino Cruises, et al., Case No. 05-220088-CIV-Martinez/Bandstra, in the United States District Court for the Southern District of Florida. The complaint asserted that while employed as a seaman aboard the vessel M/V SUNCRUZ VIII (the "Vessel"), which was then owned and operated by SunCruz, the Debtor herein, Sheridan was injured in an elevator accident aboard ship on July 25, 2002. Sheridan asserted claims under the Jones Act, 46 U.S.C. § 688, 46 U.S.C. § 10313, and the General Maritime Law of the United States. Sheridan thereafter filed a motion [DE 3395] in this Court on March 1, 2006, seeking permission to assert a late-filed claim against the Debtor.

On or about June 22, 2001 (the "Petition Date"), SunCruz commenced this case under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). By order [DE 2871] entered August 2, 2004, the Court established September 15, 2004 as the deadline for the filing of claims against the Debtor which arose after the Petition Date (the "Administrative Claims Bar Date"). The Administrative

Claims Bar Date was extended for certain categories of claimants, not including the category into which Sheridan's claim would fall, to December 31, 2004 by order [DE 3069] entered November 29, 2004.

Any claim against the Debtor arising out of the elevator incident would constitute an administrative expense claim in SunCruz's bankruptcy case, which would entitle the claimant to payment in full. The Administrative Claims Bar Date notice was sent to all creditors and potential creditors, including Sheridan, and set forth the consequences of a creditor's failure to timely file a proof of administrative expense. The Administrative Claims Bar Date notice was served on Sheridan on August 13, 2004, but Sheridan did not file any proof of claim against SunCruz before the bar date passed.

Following his 2002 elevator injury, Sheridan took over one year to advise his employer, the Debtor, about the elevator incident. Thereafter, he had maintenance and cure treatment, during which he consulted with a physician designated by SunCruz who treated his ailment. Sheridan ceased seeking medical treatment after he became pain-free. Sheridan argues that he failed to file a claim because he was pain-free at the time of the bar date and could not predict that his pain would later return, let alone that it would do so in a significantly more intense manner.

The Vessel was sold during the course of the Debtor's bankruptcy case to a new owner, Oceans Casino Cruises ("Oceans"), which continued to employ Sheridan as an engineer aboard the Vessel.

Sheridan suffered a subsequent injury in a welding accident in 2005 – after the September 2004 administrative claims bar date – while employed on the Vessel. The Debtor contends that the 2005 accident was an intervening event which is the underlying source of Sheridan's pain and that Sheridan should seek redress solely from Oceans, the new owner of the Vessel.

At Sheridan's deposition on August 23, 2006, Sheridan stated that the 2005 incident produced the onset of severe back pain which radiated into his leg, which were symptoms that he did not have after the 2002 accident. SunCruz/Foothill alleges that Sheridan is trying to carve out an improper exception for his failure to adhere to the administrative claims bar date in an effort to extract a larger recovery from his 2002 accident than may otherwise be available to him.

Sheridan contends he is doing nothing of the sort. Although he was aware of the administrative claim bar date, he simply did not believe he had a claim to pursue at that time because he was relatively pain-free.

SunCruz/Foothill argues that any conclusions that Sheridan's treating physicians drew in 2005 about the link between the 2002 elevator accident and Sheridan's current pain was flawed because they had originally been given an inaccurate medical history from Sheridan when he failed to disclose to SunCruz or the treating physicians information regarding the other accident.

SunCruz/Foothill asserts that Sheridan's claim under both bankruptcy and maritime law accrued on the date that the 2002 elevator accident occurred and that even if Sheridan was unaware that his claim had accrued on that date, his failure to file a claim before the bar date was not the result of excusable neglect. SunCruz/Foothill states that Sheridan's Motion should be denied on legal and equitable grounds. Additionally, SunCruz/Foothill points out that Sheridan's 2005 welding accident is unquestionably recognized as a compensable incident under the Jones Act and General Maritime Law and argues that Sheridan will not be prejudiced by the disallowance of his late filed claim because he would have a remedy for the 2005 accident – a claim against his current solvent employer Oceans.

## Discussion

Section 101(5)(A) of the Bankruptcy Code defines "claim" in relevant part as "right to payment, whether or not such payment or such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, legal equitable secured, or unsecured." Congress intended a "claim" to be given a very broad interpretation to include all legal and equitable obligations of a debtor, no matter how remote or contingent. *See In re Piper Aircraft Corp.*, 168 B.R. 434, 436-37 (S.D. Fla. 1994) *aff'd sub nom Epstein v. Official Committee of Unsecured Creditors of Estate of Piper Aircraft Corp.* 58 F.3d 1573 (11th Cir. 1995); *see also Ohio v. Kovacs* 469 U.S. 274, 279 (1985). Nonbankruptcy substantive law defines when particular relationships between a debtor and a third party is sufficient to give rise to an obligation cognizable as a "claim" in bankruptcy. *United States v. Union Scrap Iron & Metal*, 123 B.R. 831, 835 (D. Minn. 1990) (*citing In re Remington Rand Corp.*, 836 F.2d 825, 830 (3d Cir. 1988). A claim exists only when the pre-bankruptcy relationship between the debtor and third party contained all the elements necessary to give rise to a legal obligation under the relevant substantive non-bankruptcy law. *In re UNR Indus.* 29 B.R. 741, 745-46 n.4 (N.D. Ill. 1983).

The relevant nonbankruptcy law here is maritime law. Under maritime law, Sheridan had a cause of action, and thus a bankruptcy claim, on the date of the 2002 elevator incident. *See Downie vs. U.S. Lines Co.*, 359 F.2d 344 (3d. Cir 1996).

Accepting as I must for purposes of the Motion that Sheridan had a claim, the question is whether he should be allowed to liquidate his late filed claim in the District Court litigation[2]

---

[2] Pursuant to the express provisions of 28 U.S.C. § 157(b)(2)(B), the Bankruptcy Court has jurisdiction over the allowance or disallowance of claims against the Debtor's estate, "but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under Title 11."

notwithstanding the fact that the claim was filed after the applicable bar date under the theory of excusable neglect. Bankruptcy Rule 9006(b)(1) provides that, if a party moves for permission to act after having missed a deadline, the court "may at any time in its discretion ... permit the act to be done where the failure to act was the result of excusable neglect." This language establishes two requirements that must be met before untimely action will be permitted. First, no relief is available unless the failure to comply with the deadline "was the result of excusable neglect." Rule 9006(b)(1). Second, the court may withhold relief if it believes forbearance inappropriate; the statute does not require the court to forgive every omission caused by excusable neglect, but provides instead that the court "may" grant relief "in its discretion." *Id.* Thus, I must at the threshold determine my authority to allow untimely action by asking whether the failure to meet the deadline resulted from excusable neglect; if the answer is yes, then I must consider the equities and decide whether to excuse the error.

The standards for allowing a claim under the theory of excusable neglect are set forth in *Pioneer Investment Services v. Brunswick Assoc. Ltd. Partnership*, 113 S. Ct. 1489 (1993). *Pioneer* sets forth the factors for determining whether excusable neglect has occurred. Those standards are:

> ... [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Id.* at 395.

It is beyond dispute that most, but not all, things needed to be done in connection with the wrap up of this 2001 case have been done. Litigation over Sheridan's claim will very likely delay the conclusion of this case. The cost of delay is entirely to be borne by Wells Fargo Foothill, the party responsible under the confirmed chapter 11 reorganization plan for the payment of administrative expenses (which include both the cost of SunCruz's counsel and Sheridan's prospective claim). It is

not clear that the prejudice to Wells Fargo Foothill is prejudice to "the debtor" within the meaning of *Pioneer;* for purposes of the issues before me now, I assume without deciding the question that it is. Thus, one of the *Pioneer* factors tilts, albeit not very strongly, against a finding of excusable neglect.

As noted above, Sheridan filed his original motion to file a late claim on March 1, 2006. SunCruz/Foothill vigorously objected, and it was not until June 2007 that the issues involved finally came to an evidentiary hearing. This decision has taken longer than I would wish to prepare. I cannot attribute the delays between March 2006 and October 2007 to either of the parties, both of whom appear to have acted in good faith since the original motion was filed. There is a certain irony in considering the issue of delay, since Sheridan's claim would very likely have been liquidated by now had SunCruz/Foothill not objected, but it was of course acting well within its rights to object, with the ultimate objective that Wells Fargo Foothill would not have to pay anything to Sheridan. The length of delay involved does not strike me as particularly significant either to the case (there remain other open matters in the SunCruz case) or to efficient court administration.[3] I therefore conclude that the second *Pioneer* factor is relatively neutral.

The third and fourth *Pioneer* factors are far more important here. Was the delay in filing his claim within Sheridan's control? Has he acted in good faith?

Sheridan testified that he did not file a claim before the bar date because he was not aware that he had a claim under the Bankruptcy Code. He realized of course that he was injured during the 2002 incident, but the pain had subsided and he no longer thought he had any reason to file a claim. Sheridan points to the Florida Department of Labor Maximum Medical Improvement form prepared by Dr.

---

[3]Bankruptcy courts are courts of equity. *Pepper v. Litton,* 308 U.S. 295 (1939). Efficient court administration is of course highly desirable, but the goal of efficiency must never supplant the just and fair application of the law to the facts presented.

Warren (Sheridan's Ex. 4), a physician engaged by SunCruz, which states that Sheridan achieved maximum medical improvement on October 8, 2003 and that the percentage of permanent impairment to his body as a whole was zero percent.

Sheridan points to a fundamental principle of maritime law, that seamen are essentially wards of the admiralty court entitled to special protection. While acknowledging this general principle, SunCruz/Foothill argues that Sheridan's status as a seaman does not afford him with any special deference in complying with established legal deadlines. SunCruz/Foothill contends that the determinative issue is whether the seaman knew or should have know that he sustained an injury, not whether he sustained a serious injury. Based on that objective analysis, SunCruz/Foothill asserts that even if Sheridan was pain-free after the 2002 accident, he had a claim when the injury occurred and cannot be excused from filing a late claim because he did not believe the injury was serious. Sun Cruz directs the Court to the traumatic/latent injury doctrine adopted by the Fifth and Sixth Circuits for the premise that when a seaman/plaintiff suffers an immediate injury from an accident but does not comprehend the extent of the injury, the date of the incident will nevertheless commence the running of the statute of limitations. *Hicks v. Hines, Inc.*, 826 F.2d 1543 (6th Cir. 1987); *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223 (5th Cir.1984).

The facts before me are distinguishable from those in *Albertson* and *Hicks*. I find that the facts in this case more closely resemble those in *Needy v. CSX Transp., Inc.*, 2000 U.S. Dist. LEXIS 22603 (W.D. Ky. Mar 21, 2000). The claimant Needy was put on notice that he had suffered an injury after consulting with several of physicians but the information he received from them was insufficient to suggest to him to file a claim against his employer for causing him injury, in light of the fact that he was not having any pain that he could connect to the performance of his job.

*Needy* distinguished the facts in *Albertson* in a manner helpful here:

> [In *Alberston*] it was clear that the injured party, Albertson, was aware of the possible connection of his injury to the chemical exposure during his employment. He had blacked out and had severe headaches on five or six occasions. After his last blackout, he informed his supervisor that he would not apply the chemical again. Clearly, Albertson saw the potential connection between the symptoms he was experiencing, which became worse over time, and the chemical he had used on the job. Thus it was proper to require Albertson to exercise due diligence in investigating and filing suit thereafter.

*Needy* at *7-8. *Needy* also distinguished the facts in *Hicks:*

> In *Hicks* . . . the court found that Hicks had not been put on notice of a chemical injury by a statement made during the course of treatment for a possibly irrelevant medical condition. The court noted that at the time, he was not necessarily suffering from any illness causally related to his exposure to chemicals. It was only when he progressed from headaches and eye problems to total blindness that the court found that he should have been aware of his injury and its relation to his employment.

*Id* at 8. By contrast with the facts in *Albertson* and *Hicks,* Sheridan credibly testified that he was pain-free after the 2002 accident and that the doctor to whom his employer SunCruz had referred him told him that he had reached his maximum recovery. It is understandable that Sheridan would not be able to draw a connection between his post-2005 accident pain and the accident in 2002. Therefore, the Court finds that the latent injury doctrine espoused in *Albertson* and *Hicks* is not applicable to this case.

SunCruz/Foothill correctly argues that the claims bar date is established to create finality in the process and further argues that it is prejudiced by Sheridan's attempt to pursue the claim after the bar date. I am required to balance the important finality that bar dates and other statutory limitations provide with fairness and justice for those who seek recovery. Certainly the Debtor (or at least Wells Fargo Foothill) would be prejudiced by allowing a late filed claim which it would otherwise not have to defend against, but the Court finds that the prejudice is not so great as to outweigh the rights of

Sheridan to pursue a claim which I find he honestly did not believe he had until well after the applicable bar date of September 15, 2004.

Additionally, SunCruz/Foothill contends that the length of the delay has impacted the efficient administration of the Court. Sheridan counters that the Court put the onus on the Debtor to challenge the late filed claim, and it was SunCruz/Foothill who was slow to address the issue that led to the delay between the filing of Sheridan's claim and the date of trial. By contrast, SunCruz/Foothill argues that the delay in the filing of the claim is what I should focus upon, and that this delay was not beyond the reasonable control of Sheridan. SunCruz/Foothill argues that Sheridan was aware that he had been injured after the 2002 incident and that – despite the assurances made by SunCruz's doctor that he had recovered, and despite the fact that he did not feel much pain – he should have filed a claim before the 2004 bar date. SunCruz/Foothill argues that Sheridan is trying to shoehorn recovery for his 2005 injury into this bankruptcy estate by claiming that the 2002 injury was the genesis of his current affliction while SunCruz/Foothill contends that the 2005 injury is the cause of Sheridan's current discomfort.[4]

After observing the Sheridan's testimony, and after carefully considering the third *Pioneer* factor, I find that Sheridan's delay in filing the claim was not unreasonable and that Sheridan has acted in good faith in all matters relating to the filing of the claim. I am convinced that Sheridan did not knowingly delay in filing a claim and that he promptly filed one once he believed he had a claim. I find Sheridan's explanation that he did not think he had a claim because the Debtor's doctors told him he was not permanently injured and because he felt minimal pain from the incident to be entirely credible.

---

[4] I emphasize that the merits of Sheridan's claim are not before me. I am concerned only with whether Sheridan will be allowed to pursue the claim in the District Court.

-10-

SunCruz/Foothill argues that Sheridan acted in bad faith in the process, asserting that Sheridan stymied discovery regarding the 2005 accident and that his failure to disclose that accident to SunCruz demonstrates a lack of good faith. While I understand the significance of disclosing prior and subsequent injuries to establish a complete picture of the nature of the injury, I find that whatever fault should be attributed to Sheridan for failing initially to disclose his 2005 injury to SunCruz, that injury undisputedly occurred *after* the 2004 claims bar date and is totally irrelevant to the analysis of whether Sheridan failed to act with good faith in failing to file his claim *before* the 2004 bar date. I accordingly find that Sheridan's actions have been taken in good faith.

In sum, I find that in applying the factors set forth in *Pioneer* to the facts in this case, those factors weigh in favor of a finding that Sheridan's failure to file a claim before the applicable bar date was the result of excusable neglect, and that Sheridan should be allowed to pursue his late filed claim.

**Motion for Relief from Stay**

Sheridan originally moved for relief from the automatic stay provisions of 11 U.S.C. § 362 and/or the permanent injunction provisions of the Plan and Confirmation Order to seek recovery against SunCruz as a nominal defendant in the District Court lawsuit. Sheridan correctly cited *In re Scott Wetzel Services, Inc.* 243 B.R. 802, 805 (Bankr. M.D. Fla. 1999), for the proposition that because a debtor would have no right to the proceeds of liability insurance, such proceeds are not considered property of the bankruptcy estate and stay relief to allow a personal injury claimant to pursue an action against the debtor as a nominal defendant for the purpose of recovering under an insurance policy is appropriate. As a factual matter, SunCruz does not have a conventional insurance policy. Instead, its insurance coverage for Sheridan's accident is a reimbursement policy issued through The American Club. Accordingly, *Scott Wetzel Services* does not apply. Rather, SunCruz will be a necessary and no

mere nominal party to the District Court litigation over the liquidation of Sheridan's claim, and SunCruz's entitlement to reimbursement under The American Club policy requires SunCruz to defend that claim. I find that this additional burden on SunCruz is appropriate here and will, accordingly, grant stay relief so that Sheridan may liquidate his claim in the District Court. Once that liquidation is accomplished, the parties will be required to bring the matter back to the Bankruptcy Court for formal allowance or disallowance of Sheridan's claim. Accordingly it is ORDERED:

1. Sheridan's Motion to Allow Late Filed Claim is GRANTED.

2. Sheridan's Motion for Relief from Stay is GRANTED. Sheridan is hereby AUTHORIZED to liquidate his claim in the United States District Court for the Southern District of Florida in *Sheridan v. Oceans Casino Cruises, et al.,* Case No. 05-22088-CIV-Martinez/Bandstra.

3. Upon completion of the liquidation of Sheridan's claim in the District Court, the parties are DIRECTED to return to this Court for allowance or disallowance of Sheridan's claim in a manner consistent with the claim liquidation proceedings.

###

Copies to:

Mindy A. Mora, Esq
200 S. Biscayne Blvd #2500
Miami, Fl 33131

David J. Horr, Esq.
Horr, Novak & Skipp
One Datran Center #1104
9100 South Dadeland Blvd

Michael F. Guilford, Esq.
Guilford and Rash, PA
44 West Flagler Street Suite 750
Miami, FL 33130

Office of the United States Trustee